IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| DEMICO THOMAS,<br><br>        *Plaintiff*,<br><br>*vs*.<br><br>EXXON MOBIL CORPORATION,<br>BECHTEL CORPORATION<br><br>        *Defendants*. | Civil Action No. _____<br><br>**COMPLAINT and<br>DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Demico Thomas ("Plaintiff"), by and through his undersigned counsel, hereby files this Complaint against Defendants Exxon Mobil Corporation ("Exxon") and Bechtel Corporation ("Bechtel") (together, "Defendants") alleging as follows:

### NATURE OF THE ACTION

1. This is a complaint for employment discrimination brought under 42 U.S.C. § 1981 ("Section 1981").

### PARTIES

2. Plaintiff is a Black man and a citizen of the State of Alabama. At the time of the events giving rise to this action, Plaintiff was employed by Defendants Exxon and Bechtel in Harris County, Texas.

3. Exxon is a corporate entity headquartered in the State of Texas. Exxon contracted with, operated, directed and/or supervised Defendant Bechtel in its performance of electrical and/or other services at Exxon's Baytown Olefins Plant, ("Baytown Plant") located in Baytown, Texas.

4. At all times pertinent hereto, Defendant Bechtel, along with Exxon, jointly employed the Plaintiff at the Baytown Plant.

5. Defendant Bechtel is a corporate entity headquartered in the State of Virginia. At all times pertinent hereto, Bechtel jointly, along with Exxon, employed the Plaintiff. Bechtel contracted with Exxon to provide electrical and/or other services at Exxon's Baytown Plant.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, specifically, Section 1981. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1343.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Harris County, Texas, which is situated within this judicial district.

## FACTS

8. In or around 2017, Plaintiff began his employment with Exxon and Bechtel, working as a journeyman electrician at the Baytown Plant.

9. Plaintiff was directly employed by Bechtel. However, Exxon supervised and signed off on all of Plaintiff's work at the Baytown Plant, and all work Plaintiff performed was done to Exxon's specifications and subject to Exxon's standards and requirements. Accordingly, Exxon was a joint employer of Plaintiff.

10. In or around December 2018, Plaintiff was promoted to the position of foreman. Plaintiff was one of only a few Black people who held supervisory positions at the Baytown Plant.

11. In or around December 2018, shortly after he was promoted, Plaintiff reported to his work area, also known as the print shack, and discovered that feces had been placed in and

around the entire area. Plaintiff was the only person who worked at the print shack where the feces was spread.

12. Immediately after discovering the feces, Plaintiff reported the incident to his immediate supervisor, Bechtel General Foreman Lupi Sanchez. Plaintiff complained to Mr. Sanchez that he felt the incident was racially motivated. Mr. Sanchez proceeded to report the incident to the Bechtel Safety Supervisor (name unknown), and the Bechtel Safety Supervisor reported the incident to Exxon's Safety Supervisor (name unknown).

13. On the day of the feces incident, the Bechtel Safety Supervisor and the Exxon Safety Supervisor went to the print shack and took pictures of the vandalism. On information and belief, a formal report was generated by Bechtel and Exxon.

14. In or around December 2018 and February 2019, Plaintiff repeatedly inquired with Mr. Sanchez regarding the status of his complaint and Bechtel and Exxon's investigation. Mr. Sanchez responded by telling Plaintiff that the incident was still under investigation.

15. On or about June 15, 2019, Plaintiff reported for work and found that a noose had been drawn on his print shack.

16. Immediately after discovering the drawing of the noose, Plaintiff reported the incident to Mr. Sanchez. Mr. Sanchez then reported the incident to Bechtel's Safety Supervisor and Exxon's Safety Supervisor.

17. In or around July 2019, within weeks of the noose being drawn on Plaintiff's print shack and Plaintiff's complaints to Exxon and Bechtel, Plaintiff was approached by Bechtel Site Superintendent (name unknown) with an ultimatum of either a demotion back to the role of journeyman electrician or to be laid off. Bechtel Site Superintendent told Plaintiff the ultimatum

was being given as part of a workforce reduction plan. On information and belief, Plaintiff was the only Plant employee given such an ultimatum.

18. In or around July 2019, Plaintiff accepted his layoff.

19. From the date of the noose incident until the final date of Plaintiff's employment with Bechtel and Exxon, Plaintiff continually inquired as to the status of Bechtel and Exxon's investigations into the noose incident. Plaintiff was never given any information as to any conclusions the investigations yielded. Because of this, Plaintiff did not feel safe at work. He also believed that the ultimatum—demotion or layoff—was given to him in retaliation for his complaints of discrimination. Accordingly, he no longer felt safe or welcome working for Defendants and taking the layoff was the only reasonable choice.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1981
### [Race Discrimination]

20. Plaintiff adopts by reference and incorporates paragraphs 1 through 19 as if fully set forth herein.

21. Plaintiff was, at all times relevant hereto, employed by Exxon and Bechtel.

22. At all times relevant hereto, Plaintiff was meeting Exxon and Bechtel's legitimate performance expectations.

23. Plaintiff is a Black man.

24. Exxon and Bechtel owed at all times a duty to Plaintiff not to discriminate against him on the basis of his race in the enforcement of his employment contract with respect to the terms, conditions, or privileges of employment.

25.     As set forth above, Defendants intentionally discriminated against Plaintiff based on his race and created a hostile work environment based on Plaintiff's race, in violation of Plaintiff's federally protected rights.

26.     As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

27.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his earning capacity, damage to his reputation, and disruption of his personal life and career.

WHEREFORE, premises considered, Plaintiff demands judgment against Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT II

### 42 U.S.C. §1981
### [Retaliation]

28.     Plaintiff adopts by reference and incorporates paragraphs 1 through 19 as if fully set forth herein.

29.     Plaintiff engaged in protected activity when he complained of race discrimination.

30.     Defendants retaliated against Plaintiff after he engaged in protected activity, subjecting Plaintiff to adverse actions, including intimidation and forcing Plaintiff to choose between a demotion and a layoff.  Since it was unreasonable to accept the demotion, in light of its retaliatory nature and because the position offered was below Plaintiff's skill and experience, Plaintiff was constructively discharged.

31.     There was a causal connection between Plaintiff's protected activity and the adverse actions to which he was subjected, as evidenced by, *inter alia*, the timing of the feces and noose incidents and Plaintiff's complaints of those incidents, Defendants' knowledge of Plaintiff's protected activity, and the lack of any other reasonable explanation as to why Plaintiff, alone, was forced to either resign or be demoted

32.     As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

33.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his earning capacity, damage to his reputation, and disruption of his personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order which will:

A.      Declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights under federal law;

B.      Award Plaintiff compensatory damages against Defendants;

C.      Award Plaintiff punitive damages against Defendants;

D.      Award Plaintiff damages for emotional distress against Defendants;

E.  Award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law;

F.  Award Plaintiff his reasonable attorneys' fees and expenses;

G.  Award Plaintiff such other and further relief, including equitable relief, that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all counts and claims triable by jury as raised by this Complaint.

DATED:  June 15, 2023

    Respectfully submitted,
    /s/ Danae Benton
    TX Bar No. 24080422
    **Cochran Firm**
    1825 Market Center Blvd., Suite 500
    Dallas, TX  75207
    dbenton@cochranexas.com
    Phone: (214)651-4260

    /s/ Larry Taylor
    *Attorney Admission Pending*
    TX Bar No. 24071156
    **Cochran Firm**
    1825 Market Center Blvd, Suite 500
    Dallas, TX  75207
    ltaylor@cochrantexas.com
    Phone: (214)651-4260

    COUNSEL FOR PLAINTIFF